UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

**CIVIL ACTION NO. 11-34-JBC**

**NORMA JEAN HANSEN,**                                                              **PLAINTIFF,**

**V.**                 **MEMORANDUM OPINION AND ORDER**

**MICHAEL J. ASTRUE, COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,**                          **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on cross-motions for summary judgment on Norma Jean Hansen's appeal of the Commissioner's denial of her application for supplemental security income and disability insurance benefits (R. 17, 18). Hansen brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The court, having reviewed the record and being otherwise sufficiently advised, will grant the Commissioner's motion and deny Hansen's motion.

**I. FACTUAL BACKGROUND**

The plaintiff, Norma Jean Hansen, filed an application[1] for supplemental security income and disability insurance benefits on January 24, 2008. Her claim was denied initially on March 14, 2008, and upon reconsideration on May 19, 2008. Thereafter, Hansen filed a written request for a hearing and appeared with her

---

1 Hansen filed a prior application in 2004 that was denied by ALJ James P. Alderisio in an "unfavorable" decision filed on April 20, 2006. *See* A.R. 129-138.

attorney before Administrative Law Judge ("ALJ") Frank Letchworth on March 12, 2009. Hansen, who was 42 at the time of the hearing, testified along with an impartial vocational expert, Dr. James Miller. A.R. 59-83. Hansen acknowledged a prior application and denial of benefits but alleges new medical problems regarding constant back pain, seizures, irritability, restless leg syndrome, hearing loss, and fatigue. Dr. Miller, the vocational expert, testified that Hansen would not be able to return to her past work as a bus driver but that she would be able to perform a number of cleaning- and janitorial-type jobs in both the national and regional economies. A.R. 80-82.

## II.   THE ALJ'S DETERMINATION

Applying the traditional five-step analysis, s*ee* 20 C.F.R. §§ 404.1520, 416.920; *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003), the ALJ found that Hansen had not engaged in substantial gainful activity since the application date (A.R. 48); that Hansen had the combination of severe impairments of a history of seizures, well-controlled with medication, and major depressive disorder, *Id.*; and that Hansen did not have an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R. Part 404, Appendix 1. *Id*. After considering Hansen's residual functional capacity, the ALJ then proceeded to Step 4 and determined that Hansen was unable to perform any past relevant work, specifically that of a school bus driver. A.R. 55. However, in Step 5, the ALJ in considering her age, education, work experience and residual functional capacity, concluded that

Hansen could perform significant jobs in the national economy, such as janitor/cleaner, dishwasher, food preparation worker, and hand packer. *Id*. at 56. Thus, the ALJ concluded Hansen was not under a disability and, therefore, was not entitled to supplemental security income or disability insurance benefits. A.R. 56.

## III.  LEGAL ANALYSIS

Hansen raises four legal arguments on appeal: (1) the ALJ's consideration of the treating and examining physicians' opinions, (2) the ALJ's consideration of Hansen's lay testimony and credibility, (3) the ALJ's application of the Sixth Circuit's "pain" standard, and (4) the weight accorded to the vocational expert's testimony (R. 17 at 10-15).  For the following reasons, the ALJ's decision was supported by substantial evidence and must be upheld.

### A. Treating Physicians' Opinions

Hansen cites a litany of treatment records, including records from Manchester Memorial Hospital; records from a nurse practitioner, Ella Mae McDaniel, who diagnosed her with fatigue, GERD, hypertension, and seizure disorder (*See* R. 17 at 6, 10-12); and other various treatment records from the Community Outreach Clinic for seizures and depression (R. 17 at 5-7).  The record reflects sporadic visits to Manchester Memorial during the time period 2006-2009. Hansen was primarily treated by Dr. Kishore and at the Community Outreach Clinic by nurse practitioner McDaniel.  *See* A.R. at 49; Exhibits B4F-B7F, B12F-13F, B22F.  Hansen then broadly argues that the "overwhelming weight of treating and examining physician

3

opinions prove Norma Jean Hansen is totally disabled" but fails to provide any specific contention regarding how the ALJ discounted or discredited these opinions and records.  *See* R. 17 at 10-11.  Contrary to her unsupported assertion, the ALJ's determinations are supported by substantial evidence in the record.

Although the treating physician's opinion is normally entitled to substantial deference, the ALJ is not bound by that opinion.  *See Malone v. Comm'r of Soc. Sec.*, 69 F.3d 537 (Table), WL 641280 (6th Cir. 1995)(per curiam).  If the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for his rejection.  *Malone*, 69 F.3d at *3 (citing *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

The treating physician records indicate that Hansen appeared to be functioning without any physical limitations and that Hansen's ailments were successfully treated with medications.  For example, McDaniel's own treatment notes, dated May 10, 2007, state that Hansen reported that she had been "going to fitness center – walks 2 mile [sic] day," (A.R. 334), and that her GERD was "under control" due to her taking the medicine Prevacid.  *Id*.

Regarding her seizure disorder, treatment notes dated October 2006 indicate that her "medication is working."  (A.R. 375 Exhibit B7F).  Hansen did suffer from some isolated seizure activity in early 2008, but these seizures were attributable to a "Depo shot."  (A.R. 429 Exhibit B13F).  McDaniel's treatment records also reflect

4

that Hansen "almost had seizure," because she had forgotten to take her medication for three days, but then she apparently "took meds – ok."   (A.R. 332 (Exhibit B5F). No other seizure incidents are reported during this time period.   Later treatment notes dated August 2008 and January 2009 from McDaniel report "restless legs," but "no seizures." (A.R. 564-565 Exhibit B21F).   Given this record, the ALJ concluded that Hansen's "seizure activity has been relatively well-controlled with anti-convulsant medication for almost 3 years." *Id.   See Houston v. Sec'y of Health & Human Servs*., 736 F.2d 365, 367 (6th Cir. 1984)(finding medical evidence indicated impairments, such as hypertension and osteoarthritis, were controlled with medication and therefore not disabling); *Brace v. Astrue,* 578 F.3d 882, 885 (8th Cir. 2009)(finding impairment not considered disabling if it can be sufficiently controlled by treatment or medication (citing 20 C.F.R. § 416.930(b))).

McDaniel's treatment notes contain no indication that Hansen's seizure disorder, GERD, hypertension or hyperlipidemia interferes with her ability to function normally.   In addition to controlling her seizure disorder with medication, the ALJ also noted, Hansen had been essentially "seizure-free over the past 16 months."   A.R. 49.   Thus, the ALJ's determinations and consideration of the medical evidence in the record are supported by substantial evidence.

**B.  Hansen's Testimony and Credibility**

Hansen appeared and testified before the ALJ in March 2009 regarding a number of ailments including her history of seizures, anxiety, back pain, sinus

5

problems, headaches, restless leg syndrome, and deafness in her right ear. She argues that her excellent work history bolsters her credibility and that the ALJ erred by not setting forth his reasons for explicitly rejecting her credibility.

The ALJ's credibility determinations are clearly set out and repeatedly explained. The ALJ noted that although Hansen cited numerous impairments during her testimony, such impairments were not supported by medical evidence in the record. For example, Hansen complains of restless leg syndrome; however, treatment notes reflect only subjective complaints and do not include any confirmation of her complaints by diagnostic studies or any treatment by a specialist. *See* A.R. 53 (also reflecting ALJ's analysis that Hansen's claims of sinusitis, hearing loss, headaches, and back pain were not supported by medical evidence in the record). Thus, the ALJ concluded that the "longitudinal record" failed to support her multiple allegations.

The ALJ further discussed Hansen's history of seizure disorder, finding discrepancies in her testimony between the alleged extent of her claimed limitations and her actual daily living skills and activities. Although the medical records support Hansen's history of seizure disorder, the ALJ found that her ability to drive and her daily activities, including meal preparation, household chores, financial management and shopping, and reported exercise at a fitness center, "suggest a far greater activity level than has been acknowledged." A.R. 54.

The ALJ found that Hansen's prior work history further diminished her

credibility. She reported to consultative examiner Dr. Timothy Baggs that she began working full-time at the age of 25, performing various jobs at factories and restaurants, with her longest employment being six years as a school bus driver. A.R.101. However, when questioned about her past work, Hansen reported "getting up early in the day and trying to be responsible, just wore me out." *Id.* In addition, she reported to the ALJ at the hearing that she could no longer drive a school bus because her nerves were "bad." A.R. 73. She stated, "I could work probably two or three days at practically anything, and then, that would be as far as I could go, because, I don't know, I'd just wear myself out at whatever I'm doing." A.R. 78.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The ALJ had the benefit of examining Hansen and observing her testimony and demeanor, and the record does not indicate that a different conclusion is warranted.

### C. The ALJ's "pain" assessment

At the hearing, Hansen complained of constant pain, telling the ALJ "my back is killing me." She appears to argue that this pain alone is severe enough to yield a finding of disability. In support, she suggests that the ALJ should have considered a checklist of factors, citing *Felisky v. Bowen*, in assessing her allegations of pain. *See* 35 F.3d 1027, 1038 (6th Cir. 1994)(considering the following factors: (1) daily

activities, (2) location, duration, frequency, and intensity of pain symptoms, (3) precipitating and aggravating factors, (4) type, dosage, effectiveness, and side effects of any medication taken to alleviate pain symptoms, (5) treatment, other than medication, received to relieve pain, (6) any other measures use to alleviate pain symptoms, and (7) any other factors concerning functional limitations or restrictions due to pain or other symptoms).   However, the Sixth Circuit does not "mandate that the ALJ undergo such an extensive analysis in every decision," in assessing the credibility of the claimant.   *See Bowman v. Chater*, 132 F.3d 32 (Table), WL 764419 at *4 (6th Cir. 1997).

The ALJ specifically stated in his decision that he performed a two-step process in which he first determined whether there was an underlying medical impairment that could reasonably be expected to produce the claimant's pain or other symptoms, and then, he evaluated the intensity, persistence, and limiting effects of her symptoms on basic work activities.   *See* A.R. 53.   This more succinct two-step process, as explained by the court itself in *Felisky*, has been endorsed by the courts in evaluating a claimant's allegations of pain rather than the more detailed list of factors that Hansen urges the court to apply in this case.   *See Felisky*, 35 F.3d at 1038. *See also Jones v. Sec. of Health and Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991); *Johnson v. Comm'r of Soc. Sec.*, 210 F.3d 372 (Table), WL 332059 at *3 (6th Cir. 2000).

Although Hansen's cursory argument fails to point out which factor or factors

the ALJ failed to address, the ALJ did address the majority of factors set forth in *Felisky* in addressing Hansen's allegations of pain. For example, the ALJ considered her daily activities and her ability to "perform personal care tasks," including the preparation of simple meals and various household chores. A.R. 51. The ALJ further noted the absence of any prescribed narcotic pain medication for her back or participation in any physical therapy treatment. A.R. 53. Further, lumbar x-rays yielded negative results and he found the medical evidence devoid of any treatment for such allegations of back pain. *Id*. Therefore, the ALJ's conclusion – that her back pain alone does not constitute a disability – is supported by substantial evidence in the record.

### D. Vocational Expert Testimony

Hansen's remaining claim is that the vocational expert's testimony proves she is disabled. At the 2009 hearing, the ALJ posed the following hypothetical:

> Assume the claimant can do no jobs that involves [sic] exposure to unprotected heights or hazardous equipment, no operation of a motorized vehicle. The claimant is limited to simple one- or two-step instructions; no job which involves public contact; no more than occasional and casual contact with coworkers or supervisors. The claimant requires only low-stress activity. This will preclude any production rate or quota jobs.

In response, the vocational expert, Dr. James Miller, testified that given these limitations she could do no past work, but that she could perform other jobs in the national economy such as dishwashing, food preparation, and hand packing jobs. *See* A.R. 81.

9

The ALJ then asked Miller, assuming "she's as limited as she described in today's testimony," whether that assumption would affect his answer to the hypothetical. Miller responded:

> Yes, sir. She indicated that she could only be on her feet for 15-20 minutes at a time. And she also indicated that she could only work about three days maximum in, I guess, in a five-day week. So, if she could, if she could only be on her feet for 15 to 20 minutes at a time, that would certainly rule out medium-level jobs; and if she could only work three days max, as, as she described, then she pretty much would be eliminated from the competitive labor market. *See* A.R. 82.

Hansen argues that Miller's conclusion, stated above, proves that she is disabled. However, this argument is flawed because the ALJ is the ultimate arbiter of whether Hansen's testimony proved credible. A hypothetical question need only include those limitations which the ALJ accepts as credible. *Blacha v. Sec. of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Where the hypothetical question is supported by evidence in the record, the ALJ is entitled to rely on the vocational expert's testimony that such a person can perform certain jobs. *See Hardaway v. Sec. of Health and Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987). In this case, the ALJ found inconsistencies in Hansen's testimony during the hearing regarding the degree of her limited abilities on her daily living activities with the objective medical evidence in the record. Therefore, contrary to her assertion, the vocational expert's testimony does not prove that Hansen is disabled.

## IV. CONCLUSION

The ALJ's determinations are supported by substantial evidence in the record.

Accordingly, **IT IS ORDERED** as follows:

    (1) the Commissioner's motion for summary judgment (R. 18) is **GRANTED**;

    (2) Hansen's motion for summary judgment (R. 17) is **DENIED**.

A separate judgment will issue.
Signed on February 7, 2012

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY